# CILENTI & COOPER, PLLC

ATTORNEYS AT LAW
708 Third Avenue – 6th Floor
New York, New York 10017

Telephone (212) 209-3933
Facsimile (212) 209-7102
Email: info@jcpclaw.com

October 11, 2017

**BY ECF**

Hon. Richard J. Sullivan, U.S.D.J
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

         **Re:**    *Chabla v. S.C.N.Y. Café Management Inc., et al.*
                *Case No. 17-CV-1790 (RJS)*

Dear Judge Sullivan,

      We are counsel to the plaintiff in the above-referenced matter, and jointly submit this letter with *pro se* defendant for the Court's assessment and approval of the settlement agreement ("Agreement") reached between the parties. The Agreement is being submitted contemporaneously with this letter, and the parties respectfully request that the Court approve the Agreement because it represents a fair resolution of this matter negotiated at arm's length.

        *I.*     ***The Need for the Court's Approval of the Agreement***

      As plaintiff's action arises under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), the parties' settlement must be approved by this Court. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F. 3d 199 (2d Cir. 2015). The FLSA expressly prohibits settlement of any right to unpaid minimum wages or overtime claims by employees made pursuant to 29 U.S.C. §§ 206-07, without the supervision of the Secretary of Labor. *See* 29 U.S.C. §216(c) (noting that a supervised settlement agreement "shall constitute a waiver by such employee of any right he may have [to pursue a private cause of action under FLSA"]). Courts have allowed an additional exception to the FLSA's restriction on settlement to include judicially supervised stipulated settlements. *See also D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108, 113 n.8 (1946); *Lynn's Food Stores, Inc. v. United States ex. Rel. U.S. Dept. of Labor*, 679 F.2d 1350 (11th Cir. 1982); *see also Sampaio v. Boulder Rock Creek Developers, Inc.*, No. 07 Civ. 153, 2007 U.S. Dist. LEXIS 66013 (E.D.N.Y. Sept. 6, 2007).

Hon. Richard J. Sullivan, U.S.D.J.
October 11, 2017
Page 2

### II.     *Plaintiff's Claims for Unpaid Wages*

Plaintiff filed his complaint on or about March 10, 2017, asserting causes of action for, *inter alia*, unpaid overtime compensation pursuant to the FLSA and New York Labor Law. Plaintiff alleges that he was hired in or about 2006 to work as a cook for the defendants' restaurant. Defendants employed plaintiff until on or about January 29, 2017.

Plaintiff alleges that he was typically required to work between forty-two (42) and forty (48) hours per week, and that he was unlawfully paid on a salary basis at the rate of $580 per week straight time for all hours worked. As such, plaintiff alleges that the defendants failed to pay him overtime compensation at the mandated rate of time and one-half as required by federal and state law.

Plaintiff calculated that he is owed approximately $16,000 in underlying unpaid overtime during the relevant six (6) years limitations period beginning in March 2011, with an equal amount in liquidated damages.

As reflected in the attached Agreement, the parties have agreed to settle the case for a total of $8,000 to resolve all of plaintiff's wage and hour claims against the defendants, with $4,000 payable within ten (10) days after the Court approves the terms of the settlement and dismisses the action with prejudice, and the remaining $4,000 payable in four (4) equal and consecutive monthly installments. We believe this settlement to be a fair resolution to this litigation, due to *bona fide* disputes about plaintiff's claims.

### III.    *The Agreement is Fair and Reasonable*

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc.*, 900 F. Supp.2d 332, 335 (S.D.N.Y. 2012). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07 Civ. 86, 2008 U.S. Dist. LEXIS 20786, at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food Stores, supra*, 679 F.2d at 1354)); *see also In re Penthouse Executive Club Compensation Litig.*, No. 10 Civ. 1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement).

Here, it is undisputed that this settlement did not result because of "overreaching" by the employer. To the contrary, the settlement was reached as a result of extensive arm's length negotiations, with plaintiff being represented by counsel with extensive knowledge of wage and hour law. Courts typically regard the adversarial nature of a litigated FLSA case to be an indicator of the fairness of the settlement. *See Aponte v. Comprehensive Health Management, Inc.*, No. 10 Civ. 4825, 2013 U.S. Dist. LEXIS 47637 at *9 (S.D.N.Y. Apr. 13, 2013).

Moreover, as discussed *infra*, one concern tending toward settlement is plaintiff's legitimate concern about the collectability of an unsatisfied judgment against the defendants. *See Cabrera v. Roselea Int's Services*, No. 10 Civ. 241, 2011 U.S. Dist. LEXIS 152268, at *12 (M.D. Fla. Dec. 30, 2011) (compromised settlement deemed reasonable in light of plaintiff's legitimate collectability concerns). There is always risk that a corporate defendant will have no collectable assets for this uninsured claim. This is especially true here as the defendants would likely not be able to withstand a larger settlement or judgment. Defendants operated a small neighborhood restaurant, which is no longer in operation. The Agreement significantly decreases the risk of collection by requiring the defendants to remit payment of the entire settlement sum within a few months of the Court's approval.

In light of various disputes concerning plaintiff's claims and the defendants' financial viability, this settlement should be approved. First, a dispute exists as to the length of plaintiff's employment. Defendants contend that the corporation that owns the restaurant was formed in November 2011 (a fact not disputed by plaintiff), and that the restaurant did not begin operating until January 2012, which is when the defendants alleged plaintiff began his employment. If the defendants were proven correct, it would have reduced plaintiff's potential damages by approximately $2,000 (as the limitations period would have begun in January 2012 instead of March 2011).

Second, during the course of discovery the defendants produced plaintiff's punch clock records as of September 2014. Those records revealed that plaintiff's work hours fluctuated each week, with many weeks showing that Plaintiff did not work in excess of forty (40) hours. Viewing the records as a whole, plaintiff's average workweek was forty two and one-half (42.5) hours per week. When re-calculating plaintiff's damages based on the actual number of hours worked (per the punch clock records), and the average number of hours worked for those weeks where no records were provided, plaintiff's damages amounted to approximately $4,500.

Third, the defendants also produced payroll records, which purport to show that plaintiff was paid above the statutory minimum wage and at time and one-half his regular rate for all overtime hours worked each week. While plaintiff believes there are reasons to doubt the accuracy of those records and that he would have been able to prove their unreliability at trial, the records were signed by plaintiff each week and, thus, posed a significant risk at trial.

Fourth, defendants contend that plaintiff received a free meal each day. According to the defendants, the meal credit, which amounts to between $2.50 and $4.15 (depending on the period of employment) per meal per day, should be deducted from plaintiff's damages calculations. That amounts to a deduction of approximately $4,500 for the entirety of plaintiff's employment.

Finally, as mentioned above, there is a significant concern regarding the defendants' ability to withstand a more substantial settlement or judgment, as the restaurant has since ceased operations. Short of settling at this amount, the defendants were likely to simply

consent to a judgment and, as such, plaintiff faced the real possibility of chasing an uncollectable judgment.

By settling now, plaintiff receives virtually all of his calculated unpaid wages, while enabling the parties to avoid the risks inherent in any trial. Based on our assessment of litigation risks, which we discussed thoroughly with plaintiff, he made the decision to accept the defendants' offer.

### IV.   *Application for Attorneys' Fees*

Pursuant to this firm's retainer agreement with Plaintiff, our firm will retain one-third the net proceeds of the settlement after our initial $500 in costs (filing fee and service) are deducted. Therefore, plaintiff's counsel seeks $2,499.75 in fees, plus $500 in costs for a total of $2,999.75, which is well below the firm's lodestar. Attorneys' fees in FLSA settlements are examined to ensure that the interests of plaintiff's counsel in his own compensation did not adversely affect the extent of the relief counsel procured for the clients. *See Wolinsky v. Scholastic*, 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012). In this case, plaintiff's counsel fee of one-third is reasonable. Of course, had the case proceeded, assuming plaintiff prevailed, plaintiff's counsel would have made a fee application for much more than the amount currently sought in fees.

While the Second Circuit's ruling in *Cheeks* did not outline the factors for approving a settlement, certain red-flag issues were identified, such as the inclusion of confidentiality provisions, general releases, and attorneys' contingency fees in excess of 40%. *Id.* at 206. This Agreement contains no such red flags. Moreover, since the *Cheeks* decision, many courts have recognized the "percentage of the fund" method as an appropriate means by which to compensation plaintiff's attorneys in FLSA settlements. *See Velasquez v. Digital Page*, No. 11 Civ. 3892, 2016 U.S. Dist. LEXIS 84554, at *4 (E.D.N.Y. June 28, 2016) (applying one-third of percentage of fund method in approving settlement); *see also Hiang v. Chiang*, No. 16 Civ. 1129, 2016 U.S. Dist. LEXIS 142670, at *7-8 (S.D.N.Y. Oct. 14, 2016) (awarding attorneys' fees of one-third of settlement amount in FLSA case); *Chauca v. Abitino's Pizza 49th St. Corp.*, No. 15 Civ. 6278, 2016 U.S. Dist. LEXIS 86206, at *6 (S.D.N.Y. June 29, 2016) (awarding attorneys' fees in amount of one-third of gross settlement); *Meza v. 317 Amsterdam Corp.*, No. 14 Civ. 9007, 2015 WL 9161791, at *2 (S.D.N.Y. Dec. 14, 2015) (when using the "percentage of the fund" approach, "courts regularly approve attorneys' fees of one-third of the settlement amount in FLSA cases"); *Rangel v. 639 Grand St. Meat & Produce Corp.*, No. 13 Civ. 3234, 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013) (approving attorneys' fees of one-third of the FLSA settlement amount); *Febus v. Guardian First Funding Group, LLC*, 870 F. Supp. 2d 337, 340-41 (S.D.N.Y. 2012) ("a fee that is one-third of the fund is typical" in FLSA cases).

For all of the reasons set forth above, the parties request that the Court approve the Agreement and enter the proposed Stipulation and Order of Dismissal that is being submitted simultaneously herewith, which expressly provides that the Court will retain jurisdiction over this matter solely for purposes of enforcing the Agreement.

Hon. Richard J. Sullivan, U.S.D.J.
October 11, 2017
Page 5

    We thank the Court for its continued attention to this matter.

                        Respectfully submitted,

                              Justin Clenti

cc: George Jamieson (by email)